On 7 July 1998, defendant filed a Motion to Dismiss Plaintiff's Cross Appeal to the Full Commission. In plaintiff's brief to the Full Commission, he responds to issues raised in defendant's appeal and offers his contentions regarding the prior Opinion and Award. Because of this, plaintiff's Form 44 and brief have been treated as the Appellee's Response to defendant's appeal. Therefore, defendant's Motion to Dismiss is hereby DENIED.
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner William C. Bost and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. However, pursuant to its authority under G.S. § 97-85, the Full Commission has modified the prior Opinion and Award regarding plaintiff's average weekly wage and the amounts of temporary partial disability to which he is entitled.
 ***********
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing on 11 March 1997 and in a Pre-trial Order as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times the employer-defendant was an employer and employee-plaintiff was an employee as these terms are defined under the Act.
3. The employer-employee relationship existed between the parties on August 9, 1996, the date of the alleged injury by accident.
4. Defendant-employer is self-insured under the Act with Key Risk Management Services acting as its adjusting agent.
5. At the hearing the parties stipulated to admission of pre-trial proceedings (8 pages) and certain medical records (13 pages), later supplemented by additional records (pages 14-45).
6. Subsequent to the hearing on 11 March 1997, the parties stipulated to two (2) pages of additional medical records from Dr. Curt and a G.S. § 97-27(a) evaluation report (2 pages) by Winston-Salem orthopedic surgeon David V. Janeway, designated by defendant. This concluded presentation of evidence.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing on 11 March 1997, plaintiff was a 57 year old married man (DOB 5/30/39) with a 10th grade education and a 36-year work history as a brick mason. Plaintiff has no vocational or technical training other than as a brick mason.
2. In 1994 plaintiff began working for masonry contractor, defendant-employer Foster Masonry, Inc. of Yadkinville, North Carolina. Plaintiff's regular duties as a brick mason for the employer included using both his hands and arms to lift and place 70 to 75 pound concrete blocks to lay foundations for buildings. He was paid $15.00 per hour and usually did not work a full 40-hour work week.
3. On 9 August 1996 plaintiff was laying concrete blocks as part of a concrete footer for a new building located near Guilford Baptist Church near Greensboro, North Carolina. His job required that he place 12-inch concrete blocks weighing about 75 pounds over 36-inch high reinforcing rods. The rods were supposed to be 12 inches apart, but were not. When the reinforcing rods' spacing is off, the plaintiff usually uses a concrete block cutter to cut the blocks to fit over the rods. On this occasion the concrete block cutter was not available. Thus, plaintiff was required to manually bend the rods to align with the blocks' holes so the blocks would then fit over the rods.
4. At about 10:30 a.m. on 9 August 1996 plaintiff was straddling the concrete footer laying 12-inch blocks. He picked up a concrete block with both hands and then used his left hand to bend the reinforcing rod so he could put the block over the rod. As he bent the rod with his left hand, the block started to fall so plaintiff then grabbed the block with his right hand and pulled the block up to stop it from hitting the ground. The unusual occurrence of the free-falling heavy concrete block pulled and stretched plaintiff's right arm, causing him to suffer a right rotator cuff strain, as well as a brachial plexus strain.
5. Dr. Curl testified that plaintiff's pulling back on the falling concrete block stretched the area between his right shoulder to his neck which is where the brachial plexus lies. Plaintiff's primary injury was to his brachial plexus which is the nerve structure which controls the arm.
6. On 9 August 1996 plaintiff saw Dr. Levi and orthopedic surgeon Harlan Daubert for treatment of severe pain and weakness in his right arm. Dr. Daubert prescribed ice, pain medication, rest, and an arm sling, and he took plaintiff out of work.
7. By 23 August 1996 plaintiff's pain had improved some but he still had numbness in his fingers, pain in his neck and shoulder, weakness in internal and external rotation of his shoulder, inability to sleep at night due to pain, and a numb feeling in his whole arm.
8. On 2 October 1996 plaintiff went to see Dr. Curl for treatment of these same right arm symptoms. Dr. Curl prescribed Tylenol and an arm sling and allowed plaintiff to look for work limited to using his left arm. Plaintiff then sought work with defendant consistent with this restriction, but none was available.
9. On 20 November 1996 plaintiff underwent a right shoulder arthrogram which showed a small shoulder dislocation at the humeral head from the glenoid caused by the plaintiff's accident on 9 August 1996.
10. In January and February 1997 plaintiff underwent physical therapy treatment to try to improve the use of his right arm.
11. Regarding his employment with defendant, plaintiff was a full time employee. Although he did not work when defendant did not have contract jobs available, plaintiff was not a part time employee and his employment was not seasonal in nature.
12. In the prior Opinion and Award, plaintiff's pre-injury average weekly wage was calculated pursuant to an Industrial Commission Form 22 submitted by defendant. According to this Form 22, plaintiff worked only four (4) days in November 1995. However, as shown by Defendant's Answers to Plaintiff's Interrogatories, plaintiff worked thirty (30) days in November 1995. Therefore, plaintiff's pre-injury average weekly wage was not $458.99, as found in the prior Opinion and Award.
13. During the fifty-two (52) week period prior to plaintiff's 9 August 1996 injury by accident, he missed seven (7) or more consecutive days on more than one occasion. Therefore, the second method under G.S. § 97-2(5) of calculating his average weekly wage should be used.
14. Plaintiff earned $12,262.50 during the fifty-two (52) weeks preceding his injury. Over this period, plaintiff worked two-hundred and thirteen (213) days, yielding a daily wage rate of $57.57. When multiplied by seven (7), this daily rate yields an average weekly wage for plaintiff of $402.99 as of 9 August 1996, which yields a compensation rate of $268.67.
15. On 28 April 1997 plaintiff reached the end of his healing period from his 9 August 1996 injury by accident. However, he continues to suffer from and will permanently suffer from decreased motion around his shoulder, as well as moderate to severe pain and weakness in his right arm and hand all as a result of his 9 August 1996 accident. His permanent employment restrictions are no lifting over 25 pounds, no overhead work with his right hand, and no repetitive use of his right hand. He will continue to need prescribed pain medication for this injury into the future.
16. As a result of his 9 August 1996 accident, plaintiff was unable to earn wages in his former position with defendant or in any other employment from 9 August 1996 through 2 February 1997.
17. Following his own job search efforts, on 3 February 1997 plaintiff began working for Direct Transport, Inc., driving automobiles from various locations to Greensboro, North Carolina and earning $4.75 per hour. The hours plaintiff worked on a weekly basis varied from below forty (40) hours to as high as fifty-five (55) hours per week.
18. Compensation paid pursuant to G.S. § 97-30 is designed to make up the difference between an employee's reduced capacity to earn wages and their pre-injury wage earning capacity. An employee receiving benefits under this section is partially disabled, the disability being the reduction in their capacity to earn wages. Because of the variance in hours worked by plaintiff in his position with Direct Transport, to approximate his post injury wage earning capacity, his hourly rate of $4.75 for a forty (40) hour week should be used. Plaintiff's earnings as Direct Transport are indicative of his wage earning capacity. Plaintiff's post injury wage earning capacity is $190.00 per week.
19. As a result of his 9 August 1996 accident, plaintiff was capable of earning reduced wages from 3 February 1997 through the present and continuing.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 9 August 1996, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant. G.S. § 97-2(6).
2. Because plaintiff missed seven (7) or more consecutive days on more than one occasion during the fifty-two (52) week period prior to his 9 August 1996 injury by accident, his pre-injury average weekly wage should be calculated by using the second method under G.S. § 97-2(5). Pursuant to this method, plaintiff's average weekly wage on 9 August 1996 was $402.99, yielding a compensation rate of $268.67. G.S. § 97-2(5).
3. As a result of his 9 August 1996 injury by accident, plaintiff entitled to be paid by defendant temporary total disability compensation at the rate of $268.67 per week for the period of 9 August 1996 through 2 February 1997. G.S. § 97-29.
4. As a result of his 9 August 1996 injury by accident, plaintiff is entitled to be paid by defendant partial disability compensation at the rate of two-thirds the difference between his average weekly wage of $402.99 and his post injury wage level of $190.00 for the period of 3 February 1997 through the present, subject to the statutory maximum period of three-hundred (300) weeks. G.S. § 97-30.
5. Plaintiff is entitled to have defendant pay for all related medical expenses incurred by plaintiff as a result of his 9 August 1996 injury by accident. G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the prior holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $268.67 per week for the period 9 August 1996 through 2 February 1997. Said amount shall be paid to plaintiff in a lump sum, subject to the attorney's fee as approved herein.
2. Defendant shall pay plaintiff partial disability compensation at the rate of two-thirds the difference between his average weekly wage of $402.99 and his post injury wage level of $190.00 for the period of 3 February 1997 through the present, subject to the statutory maximum period of three hundred (300) weeks. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
3. Defendant shall pay all medical compensation incurred by plaintiff as a result of his compensable 9 August 1996 injury by accident, including any treatment recommended by Dr. Walton W. Curl, plaintiff's primary treating physician.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded above is approved for counsel for plaintiff. From the amounts having accrued, this fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
5. Defendant shall pay all costs, including expert witness fees to Dr. Daubert at $300.00 and to Dr. Curl at $300.00.
 S/_________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/______________________ BERNADINE S. BALLANCE COMMISSIONER